FIRST NORTHWESTERN TRUST CO. OF SOUTH DAKOTA (formerly Trust Department of the First National Bank of Aberdeen, a Corporation), Plaintiff and Third Party Defendant,

v.

FAMILY HOMES, INC., a Corporation, Defendant and Third Party Plaintiff and Appellant,

v.

The CITY OF ABERDEEN, a Municipal Corporation, Defendant and Third Party Defendant and Appellee,

and

All Persons Unknown To Have Or Claim To Have An Interest Or Estate In Or Lien Or Encumbrance Upon The Premises Described In The Complaint, Third Party Defendants,

and

Orvin A. Bader, Third Party Plaintiff and Appellant.

No. 13100.

Supreme Court of South Dakota.

Argued Jan. 9, 1981.

Decided March 4, 1981.

Michael T. Hogan of Maloney, Kolker, Fritz, Hogan & Johnson, Ipswich, for defendant, third party plaintiffs and appellants.

Roy A. Wise of Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant, third party defendant and appellee.

DUNN, Justice.

This is an appeal from a judgment entered after a trial to the court, which found that appellant (Family Homes) had dedicated certain property (herein referred to as "First Avenue S.E.") by a declaration in the Owner's Certificate of a replatting of this property in 1963. The trial court also found that appellee, City of Aberdeen (City), had complied with the provisions of a trust agreement entered into between Family Homes, City and appellee, First Northwestern Trust Company of South Dakota (Northwestern Trust), thereby vesting title of a separate piece of property (herein referred to as "Railroad Avenue") in City. Family Homes appeals. We affirm.

This action was commenced by the trustee, Northwestern Trust, pursuant to SDCL 21–24–5, for a determination of whether Family Homes or City was entitled to certain property that was subject to a trust agreement which had been entered into by the parties. Family Homes and Orvin A. Bader (Bader)[1] commenced a third-party action against City and Northwestern Trust to quiet title to this property in themselves.

The matter was tried before Judge Berndt on June 18 and 19, 1979. At the end of the trial Judge Berndt dismissed the quiet title action; reformed the trust agreement to delete the "First Avenue S.E." property from its purview, having found that "First Avenue S.E." had previously been dedicated to City; and declared that the trust had not terminated because City had complied with its provisions.

The properties involved are two separate and distinct pieces of real property that were owned by Family Homes. Family Homes, desiring to develop "First Avenue S.E.," had the "First Avenue S.E." land replatted in 1963. The 1963 replat contained a dedication of all the streets to public use. (See Appendix A.)

On April 18, 1967, Family Homes, City, and Northwestern Trust entered into a trust agreement concerning both pieces of property. The trust agreement required that City perform certain acts within a ten-year period or the property would revert to Family Homes. In July of 1977, Family Homes requested that Northwest-

---

1. Orvin A. Bader claims a one-third interest in the disputed property by way of his redemption of certain shares of common stock of Family Homes. In accordance with an agreement between Family Homes and Bader, a distribution of certain realty was made to Bader in consideration for the redemption of this common stock, thereby resulting in his alleged one-third interest in this property.

ern Trust reconvey the property to themselves due to the alleged failure of City to comply with the terms of the trust. City protested. Northwestern Trust thereafter brought this action to determine who should properly receive this property.

Appellants raise two issues on appeal: (1) Whether the "First Avenue S.E." property was dedicated to City as a public street? (2) Did the trust agreement expire due to the failure of City to take the necessary action to acquire the property in accordance with the terms of the agreement?

We first turn to whether the 1963 replat dedicated "First Avenue S.E." to City.

The touchstone case in this area is *Tinaglia v. Ittzes*, 257 N.W.2d 724, 729 (S.D.1977) (emphasis in original), where we stated:

"Dedications are classified according to two methods. On the one hand as (a) express and (b) implied, on the other as (1) common-law and (2) statutory. A dedication is express when the intent is manifested by oral or written words, and is implied when the intent must be gathered from the acts of the dedicator. Otherwise stated, a dedication is express where the appropriation is formally declared, and is implied where it arises by operation of law from the owner's conduct and the facts and circumstances of the case." 11 McQuillin, supra, § 33.03, p. 631 (footnotes omitted).

See *Mason v. City of Sioux Falls*, 2 S.D. 640, 51 N.W. 770.

A statutory dedication is in the nature of a grant based on substantial compliance with the terms of the applicable statute, while a common-law dedication is generally held to rest upon the doctrine of estoppel in pais. *Larson v. Chicago, M. & St. P. Ry. Co.*, supra; *Cole v. Minnesota Loan & Trust Co.*, 17 N.D. 409, 117 N.W. 354.

Both sides apparently concede that this is a statutory dedication, if it is a dedication at all, and as such we must examine the

1963 plat to determine whether there has been substantial compliance with the applicable statutory requirements.

SDC 45.2805 (1939)[2] which was in effect at the time of the 1963 replat, provided in part:

When the plat . . . shall have been so made out, certified, acknowledged, and recorded, every donation or grant to the public . . . shall be deemed a sufficient conveyance to vest the fee simple title of all such parcel or parcels of land as are therein expressed, and shall be considered to all intents and purposes a general warranty against the donor . . . for the uses and purposes therein expressed and intended, and no other use and purpose whatever. The land intended to be used for the streets, alleys, ways, commons, or other public uses shall be held in trust to and for the uses and purposes expressed or intended.

The decisive factor is the Owner's Certificate on the 1963 replat, which contains the following statement: "We hereby dedicate all streets to the public use." The replat then shows several streets, including "First Avenue S.E." (See Appendix A.) This replat was filed and recorded with the register of deeds as required by statute. Appellants now desire to introduce evidence to show that what is stated on the replat and filed with the register of deeds does not mean what the words clearly, unambiguously, and absolutely import. The rule in such a case is:

" . . . If on the face of the document no doubt arises that the words are used in their primary sense, and if, read in that sense, they are plain and unambiguous, the matter is concluded." . . .

. . . .

. . . Just as acts and conduct of an owner will prevail over the owner's subsequent testimony that he intended no dedication . . . so also will the unambiguous language of a dedication preclude the ad-

---

**2.** SDC 45.2805 was later codified in SDCL 11–3–12, with minor changes.

mission of parole evidence to explain the meaning of the plat.

*Tinaglia,* supra, at 730 (citations omitted).

 Applying this rule to the present case, we do not find any ambiguity that would allow the introduction of parole evidence. The dedication could hardly be more clearly or unequivocally stated; it expressly declares that the streets are dedicated to public use. It is only through disputed expert testimony that any ambiguity whatsoever arises and that testimony concerns whether the usage of a dashed line as opposed to a solid line would indicate that "First Avenue S.E." was not intended to be part of the 1963 replat. The trial court chose to accept the testimony of appellees' expert witnesses on the question of the significance of dashed lines as opposed to solid lines. We must accept that version of the evidence, including the reasonable inferences therefrom, which supports the trial court's action. *Mulder v. Tague,* 85 S.D. 544, 186 N.W.2d 884 (1971); *Nicolaus v. Deming,* 81 S.D. 626, 139 N.W.2d 875 (1966).

We therefore hold, as did the trial court, that appellant, through substantial compliance with the statutory provisions, dedicated "First Avenue S.E." to City.

We now turn to the issue of whether the trust agreement has expired due to the failure of City to take action as required by the terms of that agreement.

The purpose of the 1967 trust agreement was to reserve "First Avenue S.E." and "Railroad Avenue" for eventual use as public streets. The trial court found, and we agree, that "First Avenue S.E." had been previously dedicated by a replat in 1963; therefore the trial court chose to reform the trust, deleting "First Avenue S.E."

The significant provisions of the 1967 trust agreement are as follows:

### II.

*CONVEYANCE.* The Sponsor [Family Homes], simultaneous with the execution of this Agreement, shall convey to the Bank [Northwestern Trust], in trust, the real estate hereinafter described and shall hold the title to the same until any one of the following events should occur:

(a) If there has not been any action taken in the development of the street or highway contemplated herein within the next 10 years, then and in that event this Agreement shall terminate as of May 1, 1977. Arrangements otherwise agreed to herein shall be null and void except for the reconveyance by the Bank to the Sponsor of that portion of the described land which it then holds in trust.

· · · ·

### VI.

*PURPOSE.* It is intended that the property described in Paragraph III (a) may be developed and used as an extension to 1st Avenue South East if the need therefor should arise; and, the property described in Paragraph III (b) may be developed and used as an arterial street or highway without access to the Hyde Park Third Addition to Aberdeen, but if the purpose for either or both of the areas should fail or not otherwise materialize, the Sponsor shall be permitted to proceed with development of these areas at the expiration of this Agreement. If in the event that the City elects to use either or both of the areas described for street or highway purposes, *it shall adopt a resolution declaring that said tract or tracts are needed as public streets,* provided that prior to the adoption of such resolution or resolutions, the governing board of the City shall first publish notice of the time and place when and where such proposed resolution or resolutions are to be considered, so that interested persons may appear at such meeting considering the adoption of such resolution or resolutions. Similar notice in writing shall be submitted by registered mail to the Sponsor or Trustee at least ten days

prior to such meeting or meetings. (Emphasis added.)

The trial court held that City had complied with the requirements of the trust agreement. It found that City had taken action to develop the street as contemplated by the trust agreement, to-wit, by the preparation and filing of a Master Plan for the property and the purchasing of additional right-of-way which would be used in the development of "Railroad Avenue."

As we have reiterated on numerous occasions, the trial court's findings will not be overturned unless they are clearly erroneous. See *Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419 (S.D.1980); *Cunningham v. Yankton Clinic P.A.*, 262 N.W.2d 508 (S.D.1978); *Mulder v. Tague,* supra. Furthermore, the burden of establishing the incorrectness of the findings is on the appellant. *Hilde v. Flood,* 81 S.D. 25, 130 N.W.2d 100 (1964).

Here appellants have failed to sustain the burden of showing that the trial court's finding that City has taken action in development of the "Railroad Avenue" property into a street is incorrect and thereby clearly erroneous. Apparently conceding that some action sufficient to comply with Clause II(a) of the trust agreement has been taken, the appellants' attempt to raise Clause VI as an indication that City has not complied with the trust requirements. Clause VI, however, does not contain the divesting language of Clause II(a). Rather, it states that if City elects to use the property for street purposes, "it shall adopt a resolution ... that said tract ... [is] needed as [a] public [street]." Generally, a contract should be liberally construed to protect the public interest, where that interest is involved. 17 Am.Jur.2d Contracts § 253 (1964).

We therefore agree with the trial court's determination that City was only required to take action sufficient to satisfy Clause II(a) in order to prevent termination of the trust agreement; thereafter, Clause VI may be complied with by the subsequent passage of the appropriate resolution.

Accordingly, we affirm the judgment of the trial court.

All the Justices concur.

## APPENDIX A

*Plat Showing*

REPLAT OF A PORTION OF BLOCK 2, AND
LINDA LANE, HYDE PARK 1ST ADD. TO ABERDEEN, S.D.
AND
PLAT OF A PORTION OF HYDE PARK OUTLOT 2

### OWNER'S CERTIFICATE

We, Family Homes, Inc., a corporation, do hereby certify that we are the absolute and unqualified owners of Lots 1, 2, 3 and 4, Block 2, and Linda Lane, all located in Hyde Park First Addition to Aberdeen, South Dakota, and that we have caused the same to be re-surveyed and re-platted as shown on the above plat. We further certify that we are the absolute and unqualified owners of Hyde Park Outlot 2, and that we have caused a portion of the same to be surveyed and platted as shown on the above plat. The above described lands shall hereafter be known and described as Lots 1, 2, 3, 4, 10, 11 and 12, Block 2, Hyde Park First Addition to Aberdeen, South Dakota, and Lots 19 and 20, Block 3, Hyde Park First Addition to Aberdeen, South Dakota. We further certify that the above described lands are free from any incumbrances. We hereby dedicate all streets to the public use.

Dated this 1st day of April, 1963.

FAMILY HOMES, INC.

(CORPORATE SEAL) .

President

Secretary

### REGISTER OF DEEDS' CERTIFICATE

Filed for record this 24 day of April, 1963, at 9:30 o'clock A. M., and duly recorded in Book _____, Page _____, and designated as Map No. _____ .

Register of Deeds, Brown County, S.D.